UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| CONCRETE WASHOUT SYSTEMS, INC., a California corporation, | ) ) ) | Case No.: 2:08-CV-02088-GEB-KJM |
| Plaintiff, | ) ) ) | ORDER GRANTING CONCRETE WASHOUT SYSTEMS, INC.'S MOTION FOR PRELIMINARY INJUNCTION |
| vs. | ) ) ) | |
| NEATON COMPANIES, LLC, and Does 1 -100, | ) ) ) | |
| Defendants. | ) ) ) ) | |

On September 19, 2008, plaintiff Concrete Washout Systems, Inc. ("CWS") filed a motion for preliminary injunction in which it seeks to enjoin defendant Neaton Companies, LLC ("Neaton") and its agents, officers, employees, and representatives from using, selling, or giving away CWS' technology (concrete washout systems boxes).  Defendant opposes the motion.  The motion was heard October 20, 2008.  Maralee MacDonald appeared as counsel for CWS.  Nicholas P. Forestiere appeared as counsel for defendant Neaton Companies, LLC.  For the reasons stated below, the preliminary injunction will be granted.

The Court finds the following facts relevant to its conclusions of law:[1]

1.  CWS is the owner of several patents on its invention of concrete washout systems boxes (Patent numbers 7,118,633; 7,121,288; 7,124,767). *See* Declaration of Mark A. Jenkins ("Jenkins

---

[1] Findings of fact and conclusions of law made in connection with this motion are not binding adjudications.  Opposite conclusions may be reached at trial on the merits.  *See Porsche Cars North America, Inc. v. Spencer*, 55 U.S.P.Q.2d 1026, n.3 (E.D.Cal. 2000).

[Revised Proposed] Order Granting Concrete Washout Systems, Inc.'s Motion for Preliminary Injunction

136086.2

1   Decl."), ¶4.  The invention is a specially designed concrete washout systems box that is used to collect

2   and recycle concrete waste from construction sites.  *Id*., ¶ 4 and Exhibits 2, 3 & 4.  Concrete trucks

3   and pumping trucks are easily washed out using the unique stationary and fold-down ramp extension.

4   Id.  Furthermore, a non-stick liner inside the concrete washout systems box permits the convenient

5   removal of the concrete waste once it has hardened.  *Id.*

6       2.  CWS licenses entities to conduct rental businesses using these unique concrete washout

7   systems boxes.  *See* Jenkins Decl., ¶ 16 and Exhibits 5-10 and 12-13.  CWS' income is derived from

8   licensing out these patented concrete washout systems boxes.  Jenkins Decl. Exhibit 1, p.1.  CWS

9   does not allow unauthorized persons or entities to use those boxes. Jenkins Decl., ¶ 16.   If

10  unauthorized persons or entities use CWS' proprietary boxes, that use diminishes the value of CWS'

11  proprietary rights. Jenkins Decl., ¶ 16.

12      3.  CWS signed a licensing agreement with Neaton, a Minnesota limited liability company on

13  June 20, 2005.  Jenkins Decl., ¶ 3 and Exhibit 1.  In this agreement ("Agreement"), CWS granted

14  Neaton a "non-transferable and exclusive" license to purchase concrete washout systems boxes and to

15  operate a rental business in portions of Minnesota. Jenkins Decl., Exhibit 1.

16      4.  In return for the use of these licensed technology rights, Neaton agreed to pay CWS "$55

17  (fifty-five) dollars per month . . . for each concrete washout systems box purchased/leased" by

18  Neaton. Jenkins Decl., Exhibit 1.  The Agreement further required Neaton to contribute "all capital

19  necessary for the business consisting of an initial minimum order of 48 (forty-eight) concrete washout

20  systems boxes purchased within 90 (ninety) days of the signed/dated agreement."   Jenkins Decl.,

21  Exhibit 1.  An additional ninety-six (96) concrete washout systems boxes were to be purchased within

22  one year of the signed Agreement. Jenkins Decl., Exhibit 1.  However, Neaton disputes that it was

23  required to purchase the additional ninety-six (96) boxes.  Neaton argues that it was merely supposed

24  to be ready to contribute capital necessary to make the purchase of ninety-six (96) boxes if it felt the

25  market demanded it. C. Neaton Decl., ¶39.

26      5.  On September 18, 2005, Neaton failed to contribute all capital necessary for the business

27  consisting of an initial order of 48 concrete washout systems boxes. Jenkins Decl., ¶ 5; *see also* C.

28  Neaton Decl. ¶¶ 15-16.   By June 20, 2006, Neaton did not to contribute all capital necessary to

1    purchase the one-year minimum of ninety-six (96) concrete washout systems boxes.  Jenkins Decl., ¶

2    6; see also C. Neaton Decl., ¶ 39.  Neaton also failed to pay CWS the agreed upon licensing fees.

3    Jenkins Decl., ¶¶ 8, 10.  The unpaid invoice for March 2008 totaled $5,995. Jenkins Decl., ¶ 8.

4    Neaton contends that it paid the $5,995 eventually through payments.  C. Neaton Decl., ¶ 20.  The

5    unpaid invoice for May 2008 totaled $5,475. Jenkins Decl., ¶ 10. Neaton states that it is paying the

6    license fees since March 31, 2008 into an account.  C. Neaton Decl., ¶ 34.

7        6.  On April 18, 2008, May 19, 2008, and June 3, 2008, CWS sent Neaton written notices of its

8    failure to comply with the terms of the Agreement. Jenkins Decl., ¶¶ 9, 12, 13 and Exhibits 6, 8, 9.

9    This notice comports with the relevant provisions of the Agreement.  The Agreement states "If

10   LICENSEE fails to comply with any of its obligations set forth in this Agreement, LICENSOR shall

11   . . .  notify LICENSEE in writing of the failure to comply." Jenkins Decl., Exhibit 1.  Neaton failed

12   to cure its breaches after written Notice of Violation. Jenkins Decl., ¶ 14.

13       7.  On July 7, 2008, CWS sent Neaton a written notice of termination, providing Neaton with

14   notice that CWS had terminated the Agreement. Jenkins Decl., ¶ 14 and Exhibit 10.  Pursuant to the

15   Agreement, CWS has the right to terminate the Agreement "for the failure of LICENSEE to fulfill its

16   obligations . . . if such failure continues more than 30 (thirty) days after a Notice of Violation has been

17   issued . . . ." Jenkins Decl., Exhibit 1.

18       8.  As a result of Neaton's failure to comply with the Agreement or to cure the breach, CWS

19   contends the Agreement has been cancelled.  *Id.*, Exhibit 10.  Thus, Neaton's license to use CWS'

20   concrete washout systems boxes has ceased.  Nonetheless, Neaton continues to use CWS' concrete

21   washout systems boxes.  *See id.*, Exhibit 11.

22       This Court has subject matter jurisdiction under 28 U.S.C. § 1332.  This Court, therefore,

23   retains equitable power to issue a preliminary injunction under applicable substantive law. Fed. R.

24   Civ. P. 2; *Califano v. Yamasaki*, 442 U.S. 682, 705 (1979).

25       For a preliminary injunction to issue, plaintiff must show "either a likelihood of success on the

26   merits and the possibility of irreparable injury, or that serious questions going to the merits are

27   raised and the balance of hardships tips sharply in its favor."  *Immigrant Assistance Project of the*

28   *L.A. County Fed'n of Labor v. INS*, 306 F.3d 842, 873 (9th Cir. 2002).

[Revised Proposed] Order Granting Concrete Washout Systems, Inc.'s Motion for Preliminary Injunction

136086.2

1  Plaintiff asserts that Defendant's actions constitute a breach of contract.  It is undisputed that

2  Plaintiff and Defendant entered into a written license agreement.  Jenkins Decl. Ex. 1.  As

3  discussed above, Plaintiff asserts three breaches of the contract here:  1) the licensee's failure to

4  make the initial order of forty-eight (48) boxes within ninety (90) days of signing the contract; 2)

5  the licensee's failure to pay license fees; and 3) the licensee's failure to abide by paragraph 4 of the

6  agreement regarding the contribution of capital to purchase ninety-six (96) boxes within a year of

7  signing the contract.

8  Defendant argues that it is depositing license fees in a bank account, like an escrow, since

9  March 31, 2008.  C. Neaton Decl., ¶ 34.  Defendant further argues its own interpretation of

10  paragraph 4 of the contract did not require it to purchase the ninety-six boxes within a year of

11  signing the contract.  C. Neaton Decl., ¶ 15.  However, Defendant's proffered evidence does not

12  prove that it actually made the capital contribution into its business under paragraph 4 of the

13  Contract.  Defendant offers only that its members stand ready to make the contribution, if they

14  deem the market requires it.  C. Neaton Decl., ¶ 15.  Defendant does not contest that it failed to

15  purchase the forty-eight (48) boxes within the first ninety (90) days of signing the agreement.  This

16  initial purchase was required in paragraph 3 of the contract.  Jenkins Decl. Ex. 1, ¶3.

17  Defendant also challenges the validity of Plaintiff's termination of the contract and asserts that

18  Defendant did not breach the contract.  Defendant argues that Plaintiff instead breached the

19  contract.  However, the fact that Neaton asserts pre-termination complaints is unavailing.  Even

20  assuming *arguendo* that Neaton was a non-breaching party, "[u]nder basic contract principles, when

21  one party to a contract feels that the other contracting party has breached its agreement, the non-

22  breaching party may either stop performance and assume the contract is avoided, or continue its

23  performance and sue for damages.  Under no circumstances may the non-breaching party stop

24  performance *and* continue to take advantage of the contract's benefits." *Jay Bharat Developers, Inc.*

25  *v. Jim Minidis*, --Cal. App. 4th--, 2008 WL 4173626 (Sept. 11, 2008) at *4 (quoting *S&R Corp. v. Jiffy*

26  *Lube Intern., Inc.*, 968 F.2d 371, 376 (3rd Cir. 1992)).   Defendant's challenge of the termination and

27  pre-termination complaints indicate that Defendant may have a claim for damages.  Nevertheless,

28  Defendant has not contested its failure to purchase the initial order required under paragraph 3 of the

1   contract.  Thus, Plaintiff has made a clear and strong showing of a likelihood of proving breach of

2   contract, or at a minimum, raised a fair question about the merits of its claims.

3       Regarding irreparable injury, Plaintiff avers that CWS' income is derived from licensing out

4   these patented concrete washout systems boxes.  Jenkins Decl. Exhibit 1, p.1.  CWS does not allow

5   unauthorized persons or entities to use those boxes. Jenkins Decl., ¶ 16.  If unauthorized persons or

6   entities use CWS' proprietary boxes, that use diminishes the value of CWS' proprietary rights.

7   Jenkins Decl., ¶ 16.

8       One of the fundamental and valuable aspects of a patent is the right to exclude others from using

9   one's invention.  *See* 35 U.S.C. § 154.  In light of Plaintiff's likelihood of success on the merits, its

10  inability to control the use of its invention will constitute irreparable injury.  *See Holley v. Hunt*, 13

11  Cal.App.2d 335, 336 (1936) (quoting *Morrison v. Woodbury*, 105 Kan. 617 (1919); issuing

12  preliminary injunction to enjoin defendants, who had business arrangement with plaintiff, from

13  further making or selling patent-applied-for metal toe protector).

14      Plaintiff further avers that CWS is unlikely to find another licensee who is willing to operate a

15  rental business in those portions of Minnesota where Neaton was operating, and continues to operate,

16  using CWS' unique technology.  Jenkins Decl., ¶16.  This could cost CWS business. Jenkins Decl.,

17  ¶16.[2]   Indeed, Defendant points to one such prospective licensee, Mr. Willert.  C. Neaton Decl.,

18  Exhibit Q.  Although Plaintiff responded to Mr. Willert's inquiry, there is no evidence that Mr.

19  Willert entered into a license agreement with Plaintiff after being informed that Defendant's

20  license agreement was terminated.  Irreparable harm arises from the chilling effect on Plaintiff's

21  potential licensees who would be faced with competing with Defendant while it does not pay for, or

22  comply with, its license.  *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832,

23  841 (9th Cir. 2001) (threatened loss of prospective customers and good will constitutes irreparable

24  harm in trademark context; citing *Tom Doherty Assocs., Inc. v. Saban Entertainment, Inc.*, 60 F.3d

25  27, 37-38 (2nd Cir. 1995) (deprivation of opportunity to expand business is irreparable harm in

26

27

28  [2] Defendant's Objections to Mark Jenkins' Declaration are overruled.

[Revised Proposed] Order Granting Concrete Washout Systems, Inc.'s Motion for Preliminary Injunction
136086.2

1   trademark licensing case)).   The record before this Court establishes the possibility of irreparable

2   harm to Plaintiff.

3       Comparatively, Defendant claims that an injunction prohibiting its use of Plaintiff's boxes

4   would end Defendant's box rental business.   This assertion is belied by Defendant's own

5   admission that Plaintiff's competitor is selling its own concrete washout boxes and that

6   Defendant's business slows substantially between November and March when the weather in

7   Minnesota is inclement.   C. Neaton Decl., ¶¶ 7, 16, 29.   Consequently, the harm Defendant risks

8   suffering if the injunction issues will not outweigh that of CWS if the injunction does not issue.

9   Defendant further argues that the injunction sought by Plaintiff will alter the *status quo ante litem*.

10  Defendant asserts that the last uncontested status of the parties was it was using and paying for

11  Plaintiff's concrete washout boxes.   However, Plaintiff claims that Defendant failed to make the

12  requisite initial order of forty-eight (48) boxes.   Thus, the status as of the last uncontested action is the

13  status before Defendant made its breach:  Defendant was not using Plaintiff's technology. Plaintiff

14  does not seek to alter the *status quo ante litem*.   The heightened standard of review urged by Defendant

15  is inapplicable here.   Further, "[i]t must not be thought ... that there is any particular magic in the

16  phrase 'status quo.' The purpose of a preliminary injunction is always to prevent irreparable injury so

17  as to preserve the court's ability to render a meaningful decision on the merits. It often happens that this

18  purpose is furthered by preservation of the status quo, but not always. If the currently existing status

19  quo itself is causing one of the parties irreparable injury, it is necessary to alter the situation so as to

20  prevent the injury.... The focus always must be on prevention of injury by a proper order, not merely on

21  preservation of the status quo." *Golden Gate Restaurant Ass'n v. City and County of San Francisco*,

22  512 F.3d 1112, 1116 (9th Cir. 2008) (quoting *Canal Authority of Florida v. Callaway*, 489 F.2d 567,

23  576 (5th Cir.1974).

24

25       Further, Defendant cites *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.3d 804 (1963) in

26  support of its argument that the preliminary injunction here would grant Plaintiff all of the relief that it

27  seeks after a trial on the merits.   *Tanner* is distinguishable.   In *Tanner*, Avis, who obtained the

28  challenged preliminary injunction, only sought injunctive relief in its complaint.   Also, the issuing

1  court improperly made adjudications against Tanner on the merits of Avis' underlying claims,

2  rendering a trial on the merits meaningless.  *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.3d 804,

3  807 & 810 (1963).  In contrast, here Plaintiff's complaint seeks both injunctive relief and monetary

4  damages for past loss.  The preliminary injunction Plaintiff seeks does not address its claim for more

5  than $400,000 in monetary damages. Thus, the relief sought by the injunction is not co-extensive with

6  "all the relief which [Plaintiff] might be entitled after a full trial on the merits."  *See Dominion Video*

7  *Satellite, Inc. v. Echostar Satellite Corp.*, 269 F.3d 1149, 1156 (10th Cir. 2001).

8      Upon considering the motion and the arguments at the hearing on the motion, and good cause

9  appearing, Plaintiff's motion for preliminary injunction is GRANTED upon the terms set forth as

10 follows:

11      1.      Concrete Washout Systems, Inc. must post a bond with the Clerk of Court in the

12 amount of $10,000.00 within fifteen (15) days of the date on which this Order is filed.  This

13 injunction shall be effective immediately upon the Court's receipt of Concrete Washout Systems,

14 Inc.'s bond.

15      2.      Defendant Neaton Companies, LLC and its agents, officers, employees, attorneys and

16 all those persons acting in concert or participation with any of them who receive actual notice of this

17 Order by personal service or otherwise are enjoined from using, selling, or giving away the concrete

18 washout systems boxes that Neaton Companies, LLC obtained from plaintiff Concrete Washout

19 Systems, Inc. or its authorized manufacturers.

20 Dated: October 22, 2008

21

22

23 _____
   GARLAND E. BURRELL, JR.

24 United States District Judge

25

26

27

28

[Revised Proposed] Order Granting Concrete Washout Systems, Inc.'s Motion for Preliminary Injunction
136086.2